UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY AIKENS,

                    Plaintiff,

         - against -

SGT. M. JONES and LIEUTENANT
TURKOFF,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/19/15

**MEMORANDUM
OPINION & ORDER**

12 Civ. 1023 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Pro se Plaintiff Anthony Aikens brings this action pursuant to 42 U.S.C. § 1983,

alleging that his constitutional rights were violated when he was assaulted, threatened, and

retaliated against while incarcerated at the Green Haven Correctional Facility ("Green Haven").

Defendants have moved for summary judgment (Dkt. No. 108) pursuant to

Federal Rule of Civil Procedure 56, arguing that Plaintiff has not exhausted his administrative

remedies, that any use of force was de minimis, and that Plaintiff's allegations of verbal

harassment do not establish a constitutional violation.

As explained below, Defendants' summary judgment motion will be granted,

because Plaintiff has not exhausted his administrative remedies.

## BACKGROUND

## I.    THE JANUARY 13, 2012 INCIDENT AND PLAINTIFF'S GRIEVANCE

On January 13, 2012, Plaintiff was incarcerated at Green Haven. A fight broke

out as Plaintiff was leaving the mess hall. (Am. Cmplt. (Dkt. No. 32) at 3) Although Plaintiff

was not involved in the fight, a corrections officer instructed him to stand against the wall and

put his hands above his head. (Id.) Plaintiff complied with this instruction, but Defendant Jones

– a Green Haven corrections officer – pushed him into one wall and then threw him against another, allegedly injuring Plaintiff's back. (Id. at 3-4)

Later that evening, Plaintiff alleges that he went to the prison infirmary, told the nurse administrator what had happened, and completed an injury report. (Id. at 3)  As Plaintiff filled out the report, Sergeant Forman and Defendant Turkoff threatened and verbally harassed him, telling Plaintiff that "things will be very bad" for him, and that he was "going down hard because [he] like[d] to report things. . . ." (Id. at 3-4)  Plaintiff claims that within an hour of submitting the injury report, he was placed on "keeplock status."[1]  See id.[2]

The next day – January 14, 2012 – Plaintiff filed a grievance concerning Defendants' conduct; he also mailed a copy of his grievance to the prison's Superintendent. (Def. Rule 56.1 Statement (Dkt. No. 111) ¶ 2; Durden Decl. (Dkt. No. 113) Ex. A, Pltf. Dep. 59)

---

[1] "Keeplock" refers to confining a prisoner in his or her cell. "It is a step down from solitary confinement, but the prisoner is not allowed out of the cell for any reason." Richardson v. Hillman, 201 F. Supp. 2d 222, 225 n.5 (S.D.N.Y. 2002).

[2] In connection with this motion, Defendants have not disputed Plaintiff's account of the January 13, 2012 incident, except as to whether Plaintiff suffered an injury. See Def. Rule 56.1 Statement (Dkt. No. 111) ¶ 8. Defendants also have not disputed Plaintiff's claim that he was threatened by Forman and Turkoff and suffered adverse action after he submitted the injury report. See id. ¶¶ 6-7.

Plaintiff has not responded to Defendants' Local Rule 56.1 statement, and has offered little, if any, admissible evidence regarding the alleged threats or retaliation he suffered. In deposition excerpts offered by Defendants, however, Plaintiff testified about the threats and about being put on keeplock status. (Durden Decl. (Dkt. No. 113) Ex. A, Pltf. Dep. 64-66) Given the liberal treatment afforded pro se litigants – particularly at summary judgment – the Court has considered Plaintiff's deposition testimony and the entire record in resolving Defendants' motion. See F.T.C. v. Med. Billers Network, Inc., 543 F. Supp. 2d 283, 303 (S.D.N.Y. 2008) ("Although [a pro se litigant's] arguments may ultimately be rejected if unsupported by the law or the evidence, the Court will afford him 'special solicitude' in responding to [a] motion for summary judgment. In particular, the Court will consider the best arguments suggested by [his] submissions and allow [him] to benefit from the [opposing party's] briefs and supporting papers whenever appropriate.").

2

Although – under the applicable regulations – prison officials were obligated to respond to Plaintiff's grievance by January 30, 2012, see 7 N.Y.C.R.R. § 701.5(b)(1), they did not do so. See Feb. 5, 2012 Pltf. Ltr. (Dkt. No. 115) at 11; Feb. 23, 2012 Melville Ltr. (Dkt. No. 115) at 9.

On February 5, 2012, Plaintiff sent a copy of his grievance to the Inmate Grievance Supervisor, inquired about the status of his grievance, and requested that his grievance be forwarded to the Central Office Review Committee ("CORC"), a body that reviews grievance appeals. (Feb. 5, 2012 Pltf. Ltr. (Dkt. No. 115) at 11)   At his deposition, Plaintiff testified that on February 7 or 8, 2012, he sent a copy of his grievance directly to the CORC. (Def. Rule 56.1 Statement (Dkt. No. 111) ¶ 3; Durden Decl. (Dkt. No. 113) Ex. A, Pltf. Dep. 61)

On February 23, 2012 – after Plaintiff had filed the instant action – he received a letter from Captain T. Melville on behalf of Superintendent Lee, stating that the claims in his grievance could not be "substantiate[d]."  (Feb. 23, 2012 Melville Ltr. (Dkt. No. 115) at 9)

## II.   PROCEDURAL HISTORY

Plaintiff filed this action on February 8, 2012. (Cmplt. (Dkt. No. 2))  Plaintiff's original complaint named Sergeant Jones, Sergeant Forman, Lieutenant Turkoff, Superintendent William Lee, and Commissioner Brian Fischer as defendants. (Id.)  On September 21, 2012, Defendant Jones filed a motion to dismiss, arguing that Plaintiff had not exhausted his administrative remedies or stated an Eighth Amendment claim, and that Defendant Jones was entitled to qualified immunity. (Def. Mot. to Dismiss Br. (Dkt. No. 41))  On September 30, 2013, this Court denied Defendant Jones's motion. Accepting Plaintiff's allegations as true, this Court concluded that (1) Defendants' threats may have rendered grievance procedures unavailable to Plaintiff, such that his failure to exhaust would be excused; (2) Plaintiff had

3

adequately pled an Eighth Amendment claim; and (3) Jones had not demonstrated that he was entitled to qualified immunity. (Order Denying Mot. to Dismiss (Dkt. No. 58))

After the motion to dismiss was denied, discovery proceeded. On November 6, 2013, Plaintiff dropped his claims against Defendants Lee and Fischer. (Dkt. No. 67) Plaintiff later withdrew his claims against Defendant Forman.[3] (Dkt. No. 123) On August 15, 2014, Defendants Jones and Turkoff moved for summary judgment. (Dkt. No. 108)

## DISCUSSION

## I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991).

In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing

---

[3] On March 3, 2014, defense counsel submitted a letter to this Court stating that Plaintiff intended to withdraw his claims against Sergeant Forman. (Dkt. No. 95) Counsel stated that the parties would submit a stipulation withdrawing the claims against Forman "[u]nder separate cover." (Id.) No such stipulation was submitted. Accordingly, on March 18, 2015, this Court held a telephone conference with the parties to determine whether Plaintiff in fact wished to drop his claims against Forman. Plaintiff confirmed that he wished to have his claims against Forman dismissed. (Mar. 18, 2015 Conf. Tr. (Dkt. No. 121) at 3) Accordingly, the claims against Forman were dismissed. (Dkt. No. 123)

summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). However, to survive a summary judgment motion, a plaintiff "must 'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "Mere conclusory statements, conjecture or speculation" by the plaintiff will not defeat a summary judgment motion. Gross v. Nat'l Broad. Co., Inc., 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).

"Although the same standards apply when a pro se litigant is involved, 'the pro se litigant "should be given special latitude in responding to a summary judgment motion."' . . . [T]he Court must liberally construe the claims of a pro se litigant." Brown v. Selwin, 250 F. Supp. 2d 299, 306-07 (S.D.N.Y. 1999) (quoting Shepherd v. Fraisher, No. 96 Civ. 3283 (JGK), 1999 WL 713839, at *2 (S.D.N.Y. Sept. 14, 1999) (citation omitted)).

## II.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.   Exhaustion Under New York's Prison Grievance Procedures

Under the Prison Litigation Reform Act (the "PLRA"), a district court may not hear a Section 1983 claim until the plaintiff has exhausted the available administrative remedies. 42 U.S.C. § 1997e(a); see Espinal v. Goord, 558 F.3d 119, 123-24 (2d Cir. 2009). "'[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself.'" Id. at 124 (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)).

"New York provides an elaborate administrative grievance process for prisoners in New York State correctional facilities." Cruz v. Jordan, 80 F. Supp. 2d 109, 117 (S.D.N.Y.

5

1999); see 7 N.Y.C.R.R. § 701. "[P]risoners must exhaust each level of the three-tiered [New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Program ("IGP")]." Hilbert v. Fischer, No. 12 Civ. 3843 (ER), 2013 WL 4774731, at *3 (S.D.N.Y. Sept. 5, 2013). Under New York's Inmate Grievance Program, "(1) the inmate submits a grievance to the Inmate Grievance Review Committee ('IGRC'), which comes to a determination on the grievance, (2) the inmate [must] appeal the IGRC's determination to the facility superintendant, and (3) the inmate [must] appeal the superintendant's decision to the Central Office Review Committee ('CORC')." Parris v. N.Y. State Dep't Corr. Servs., 947 F. Supp. 2d 354, 361 (S.D.N.Y. 2013) (citing 7 N.Y.C.R.R. N.Y. § 701.5 (2012)); Hilbert, 2013 WL 4774731, at *3 (same); Kasiem v. Switz, 756 F. Supp. 2d 570, 575 (S.D.N.Y. 2010) (same); see 7 N.Y.C.R.R. §§ 701.5(a)-(d).

Although New York's regulations require the Inmate Grievance Review Committee to resolve an inmate's grievance within sixteen calendar days, 7 N.Y.C.R.R. § 701.5(b), "[t]ime limit extensions may be requested at any level of review . . . , [provided that] such extensions may be granted only with the written consent of the grievant." 7 N.Y.C.R.R. § 701.6(g)(2). "Absent such an extension, matters not decided within the time limits may be appealed to the next step" by the inmate. Id.

"In general, exhaustion of administrative remedies is the rule, and waiver the exception, because exhaustion serves myriad purposes, including limiting judicial interference in agency affairs, conserving judicial resources, and . . . allow[ing] the agency to develop the factual record of the case." Cruz, 80 F. Supp. 2d at 120. "It is well established that to exhaust . . . 'a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review' before filing suit." McCoy v. Goord, 255 F. Supp. 2d 233, 246 (S.D.N.Y.

6

2003) (quoting Porter v. Goord, No. 01 Civ. 8996 (NRB), 2002 WL 1402000 at *1 (S.D.N.Y.

June 28, 2002)). Accordingly, prisoners must complete all three steps of the inmate grievance

procedure, including both levels of appeals, to exhaust their administrative remedies. Id.

Under the PLRA, "proper exhaustion of administrative remedies is necessary,"

see Woodford v. Ngo, 548 U.S. 81, 84 (2006), and "'prison officials are entitled to require strict

compliance with an existing grievance procedure.'" Williams v. City of New York, No. 03 Civ.

5342 (RWS), 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005) (quoting Orta v. City of New

York Dep't of Corr., No. 01 Civ. 10997 (AKH), 2003 WL 58856, at *7 (S.D.N.Y. Feb. 25,

2003)). Accordingly, "[e]ven where an inmate files a grievance yet receives no response, the

inmate must nevertheless exhaust his appeals" as provided by the grievance procedures.[4]

Williams, 2005 WL 2862007, at *10 (internal quotation omitted); see Charles v. Gordon, No. 12

Civ. 8332 (CM) (JCF), 2013 WL 6667632, at *4 (S.D.N.Y. Dec. 17, 2013) ("Courts in this

circuit require an inmate to pursue all levels of appeal even if the inmate does not receive a

response to his initial grievance.").

Here, it is undisputed that "the prison provided grievance procedures that inmates

claiming excessive force could utilize," Hemphill v. New York, 380 F.3d 680, 686 (2d Cir.

2004), and Plaintiff filed a grievance on January 14, 2012. See Def. Rule 56.1 Statement (Dkt.

No. 111) ¶ 2. That same day, he sent a copy of his grievance to Green Haven's Superintendent.

---

[4] Exhaustion of administrative remedies is required even where an inmate believes that it will
prove futile. Harrison v. Goord, No. 07 Civ. 1806 (HB), 2009 WL 1605770, at *4 (S.D.N.Y.
June 9, 2009) ("Prisoners are required to exhaust their administrative remedies 'even if they
believe that administrative remedies would be ineffective or futile.'" (quoting Johnson v. Killian,
No. 07 Civ. 6641 (LTS) (DFE), 2009 WL 1066248 (S.D.N.Y. Apr. 21, 2009))); Arce v. Keane,
No. 01 Civ. 2648 (BSJ), 2004 WL 439428, at *5 (S.D.N.Y. Mar. 9, 2004) ("[F]utility will not
excuse an inmate's failure to exhaust his administrative remedies.") (citing Porter v. Nussle, 534
U.S. 516, 524 (2002) ("Even when the prisoner seeks relief not available in grievance
proceedings . . . exhaustion is a prerequisite to suit.")).

See Durden Decl. (Dkt. No. 113) Ex. A, Pltf. Dep. 59. Plaintiff did not receive a response to his grievance within sixteen days. See Feb. 23, 2012 Melville Ltr. (Dkt. No. 115) at 9. Accordingly, after this time limit expired, Plaintiff was entitled to appeal, first to the Superintendent, and then to the CORC. See 7 N.Y.C.R.R. § 701.6(g)(2).

Plaintiff did not, however, properly submit an appeal to either the Superintendent or the CORC. While he sent a copy of his grievance to the Superintendent the same day that he submitted his grievance to the Inmate Grievance Review Committee, see Durden Decl. (Dkt. No. 113) Ex. A, Pltf. Dep. 59, his "appeal" to the Superintendent was not properly submitted, as it came before the Committee's time to respond had expired. See 7 N.Y.C.R.R. § 701.6(g)(2). Plaintiff's submission of his grievance to the CORC on "February 7th or 8th," 2012, see Def. Rule 56.1 Statement (Dkt. No. 111) ¶ 3; Durden Decl. (Dkt. No. 113) Ex. A, Pltf. Dep. 61, was likewise not proper. Plaintiff was required to properly appeal to the Superintendent before appealing to the CORC. See Parris, 947 F. Supp. 2d at 361; 7 N.Y.C.R.R. § 701.5(d)(1)(i). Even if Plaintiff had properly appealed to the Superintendent, the grievance procedures do not permit an appeal to the CORC simply by sending that body a copy of the original grievance. See id. Instead, the grievance procedures require an inmate who wishes to appeal to the CORC to complete and sign Form # 2133. Id. At least one court has found that a failure to submit a completed Form # 2133 constitutes a default justifying a finding that administrative remedies have not been exhausted. Bennett v. Wesley, No. 11 Civ. 8715 (JMF), 2013 WL 1798001, at *5 (S.D.N.Y. Apr. 29, 2013) (granting defendants summary judgment on exhaustion grounds where "Plaintiff [had] not . . . filed Form #2133"; "even if the CORC had received the letter, Plaintiff would not have exhausted his remedies, as Plaintiff has not alleged that he filed Form # 2133, which is required to properly file an appeal with CORC" (citing 7 N.Y.C.R.R. § 701.5(d)(1)(i)

8

("If the grievant or any direct party wishes to appeal to the CORC, he or she must complete and sign Form # 2133 and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance."))).

Finally, the CORC has 30 calendar days from its receipt of an appeal to render a decision. See Kasiem, 756 F. Supp. 2d at 575; 7 N.Y.C.R.R. § 701.5(d)(3)(ii). Plaintiff claims that he sent his grievance to the CORC on February 7 or 8, 2012, (see Durden Decl. (Dkt. No. 113) Ex. A, Pltf. Dep. 61), and Plaintiff filed this lawsuit on February 8, 2012. (Cmplt. (Dkt. No. 1)) Accordingly, even if Plaintiff's appeal to the CORC had been properly submitted, he filed the instant lawsuit well before the CORC was required to issue a decision concerning his appeal.

In sum, because Plaintiff did not follow the procedures set forth in the applicable regulations, and did not permit the CORC to consider his appeal before filing suit, he has not properly exhausted his administrative remedies. See Woodford, 548 U.S. at 83-84 ("[A]n untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement.); Winston v. Woodward, No. 05 Civ. 3385 (RJS), 2008 WL 2263191, at *3, 7 (S.D.N.Y. May 30, 2008) (granting defendants summary judgment on exhaustion grounds where "prior to receiving a[] . . . determination from the [Superintendent]," and one day before the Superintendent's time to respond had expired, "Plaintiff attempted to 'appeal' his case," and did not later file a timely appeal to the CORC); Mateo v. Alexander, No. 08 Civ. 8797 (RJH) (DCF), 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010) (granting defendants summary judgment on exhaustion grounds where plaintiff filed lawsuit before the CORC decided his appeals; "[t]he problem for Mateo is not that the grievance process was unavailable to him; it is that he did not wait to file a lawsuit until the process had run its course"); Harris v. Gunsett, No. 12 Civ. 3578 (PAC) (JCF), 2013 WL 3816590, at *1-2

9

(S.D.N.Y. July 22, 2013) (dismissing complaint for failure to exhaust where plaintiff "filed inmate grievances on April 12, 2012 and on April 18, 2012" and commenced his lawsuit "[on] April 29, 2012," while "his inmate grievance complaint was still pending"); Mendez v. Astrue, No. 01 Civ. 4157 (GEL), 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) (granting motion to dismiss because, although plaintiff appealed to the CORC, "[t]he documents . . . state that [plaintiff's] appeal has . . . been forwarded to Central Office Review Committee . . . and is pending review by CORC," and "[t]hus, as far as the record before this Court shows, at the time the complaint was filed, administrative review had not been completed, and the requirements of § 1997e(a) had not yet been met"); see also Bennett, 2013 WL 1798001, at *5 (granting summary judgment where "Plaintiff [did] not . . . file[] Form #2133, which is required to properly file an appeal with CORC"; "assuming [arguendo] that Plaintiff did, in fact, appeal to the CORC, he never received a response from CORC . . . . A final decision by the CORC is required in order to exhaust administrative remedies, and because there is no indication that Plaintiff ever received such a decision he has failed to exhaust his administrative remedies.")

## B. Exceptions to Exhaustion Requirement

"Although exhaustion of administrative remedies is mandatory under the PLRA, the Second Circuit has recognized that 'in some circumstances, the behavior of defendants may render administrative remedies unavailable.'" Kasiem, 756 F. Supp. 2d at 576 (quoting Hemphill, 380 F.3d at 686). Accordingly, "[i]n certain situations, an inmate may be exempt from the exhaustion requirement." Charles, 2013 WL 6667632 at *4. "An inmate's failure to comply with [the exhaustion] requirement may be excused where: (1) administrative remedies were not in fact 'available to the prisoner,' (2) 'defendants' own actions inhibited' exhaustion, or (3) 'special circumstances justify' non-exhaustion." Messa v. Goord, 652 F.3d 305, 309 (2d Cir.

10

2011) (quoting Hemphill, 380 F.3d at 686); see Ruggiero v. County of Orange, 467 F.3d 170,

175-76 (2d Cir. 2006). "[T]he same facts sometimes fit into more than one of these categories."

Rivera v. Anna M. Kross Ctr., No. 10 Civ. 8696 (RJH), 2012 WL 383941 at *3 (S.D.N.Y. Feb.

7, 2012) (quoting Giano v. Goord, 380 F.3d 670, 677 n.6 (2d Cir. 2004)).

## 1.    Availability of Administrative Remedies

As to the first category, "'the court must ask whether administrative remedies

were in fact available to the prisoner.'" Kasiem, 756 F. Supp. 2d at 576 (quoting Hemphill, 380

F.3d at 686). "The test for assessing the availability of administrative remedies is an objective

one: that is, would a similarly situated individual of ordinary firmness have deemed them

available." Hemphill, 380 F.3d at 688 (citing Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)

(articulating the "individual of ordinary firmness" standard in the context of a prisoner retaliation

claim)).[5] "[T]hreats or other intimidation by prison officials may well deter a prisoner of

'ordinary firmness' from filing an internal grievance, but not from appealing directly

to . . . external structures of authority such as . . . federal courts." Hemphill, 380 F.3d at 688; see

id. at 683-84 (remanding for determination of whether administrative remedies were available

---

[5] "The Second Circuit has yet to rule on whether Hemphill remains good law following the Supreme Court's decision in Woodford that a prisoner must comply with all of a prison's grievance procedures before seeking relief in federal court." Malik v. City of New York, No. 11 Civ. 6062 (PAC) (FM), 2012 WL 3345317 at *6 n.7 (S.D.N.Y. Aug. 15, 2012) (citing Woodford, 548 U.S. at 81; Amador v. Andrews, 655 F.3d 89, 102-03 (2d Cir. 2011) (declining to reach the issue because appellant failed to establish that the defendants were estopped from raising exhaustion as a defense or that "special circumstances" existed)); see also Ruggiero, 467 F.3d at 178 ("We need not determine what effect Woodford has on our case law."). "[C]ourts in this Circuit have acknowledged the tension between [Woodford and Hemphill], but have continued to apply Hemphill." Malik, 2012 WL 3345317 at *6 n.7 (citing cases); see also Stevens v. City of New York, No. 12 Civ. 1918 (JPO) (JLC), 2012 WL 4948051, at *4-6 (S.D.N.Y. Oct. 11, 2012) (discussing viability of Hemphill after Woodford and "conclud[ing] that Woodford is best interpreted in a manner that renders it compatible with, rather than fatal to, Hemphill").

where an officer told inmate plaintiff that he had "better drop" his complaint regarding injuries from a beating or the officer would "make [plaintiff's] life a living hell . . . because [he] ha[d] friends all over").

Where an inmate files a grievance or appeals a grievance determination after having received threats or suffered retaliation, the inmate's conduct "'directly cuts against' . . . [an] argument that . . . administrative remedies were unavailable [to the inmate]." Winston, 2008 WL 2263191, at *8 (quoting Amador v. Superintendents of Dep't of Corr. Servs., No. 03 Civ. 0650 (KTD), 2007 WL 4326747, at *8 (S.D.N.Y. Dec. 4, 2007)) (granting defendants summary judgment on exhaustion grounds; administrative remedies were available to plaintiff despite alleged threats where plaintiff filed an appeal, albeit a premature appeal, regarding his grievance); Mateo v. Ercole, No. 08 Civ. 10450 (RJH) (DCF), 2010 WL 3629520, at *4 (S.D.N.Y. Sept. 17, 2010) (granting defendants summary judgment on exhaustion grounds; administrative remedies were available to plaintiff – despite alleged threats of physical retaliation and fear of harassment – where plaintiff had filed grievances and appeal; such conduct is "inconsistent with an assertion that fear rendered the grievance process unavailable"); see also Rivera, 2012 WL 383941, at *3 (administrative remedies available where plaintiff had filed several grievances and had not alleged any "threats, beatings, . . . or . . . other misconduct deterring him from fulfilling the requisite procedure").

Here, Plaintiff claims that administrative remedies were unavailable to him because he "was threaten[ed] and harass[ed] by Defendant[s] . . . an[d] retaliated against approx[imately] 2 hours after [the January 13, 2012] incident . . . was reported." (Pltf. Br. (Dkt. No. 115) at 3)  This claim is belied, however, by the undisputed fact that the day after Plaintiff had been threatened and put into keeplock status, he filed a grievance with the Inmate Grievance

12

Program, and sent a copy of his grievance to Green Haven's Superintendent. See Def. Rule 56.1

Statement (Dkt. No. 111) ¶ 2; Durden Decl. (Dkt. No. 113) Ex. A, Pltf. Dep. 59. Moreover, at

his deposition, Plaintiff testified that any threats or harassment by Defendants had not deterred

him from pursuing his grievance. Indeed, Plaintiff testified that Defendants' alleged threats and

harassment convinced him of the necessity of reporting Defendants' conduct to Green Haven's

Superintendent:

Q. . . . . On January 13, 2012, Lieutenant Turkoff said you got a pass last time.

A. Right.

Q. Was there anything about that conversation that caused you not to file complaints?

A. No. I did file complaints then because of what he said because I know they wanted me in the box. They wanted me in the position where I was helpless.

Q. Was there anything said by Sergeant Forman that night of January 13, 2012, that caused you not to file a complaint or a grievance?

A. No. Basically from his harassment and threats, like from him stating, "You can't say you hurt your back somewhere else? You know it's going to be a big investigation. Things are going to get bad for you." Like I said, I looked at him at first like he was crazy, you know, and I didn't even initially respond to him. That's when Lieutenant Turkoff came into the room. This is why I felt that Superintendent Lee need to be apprised on that situation of what was said.

(Def. Rule 56.1 Statement (Dkt. No. 111) ¶¶ 6-7; Durden Decl. (Dkt. No. 113) Ex. A, Pltf. Dep.

65-66)

Given that (1) after the alleged threats, harassment, and retaliation, Plaintiff

submitted his grievance, sent a copy to the Superintendent, inquired about his grievance with the

Inmate Grievance Supervisor, and forwarded a copy of the grievance to the CORC; and (2)

Plaintiff testified at his deposition that the Defendants' threats, harassment, and retaliation had

not deterred him from pursuing his grievance, this Court concludes that any such threats,

13

harassment, or retaliation did not render the grievance procedures unavailable to Plaintiff. See
Winston, 2008 WL 2263191, at *8. Accordingly, Plaintiff's failure to exhaust his administrative
remedies is not excused by Defendants' alleged conduct.

### 2. Defendants Are Not Estopped From Asserting an Exhaustion Defense

A court considering an exhaustion defense should also determine whether the
"'defendants have either waived the defense of failure to exhaust or acted in such a way as to
estop them from raising the defense.'" Chisholm v. N.Y. City Dept. of Corr., No. 08 Civ. 8795
(SAS), 2009 WL 2033085, at *2 (S.D.N.Y. July 13, 2009) (quoting Ruggiero, 467 F.3d at 175).
"A prisoner may invoke the doctrine of estoppel when 'defendants took affirmative action to
prevent him from availing himself of grievance procedures.'" Amador, 655 F.3d at 103 (quoting
Ruggiero, 467 F.3d at 178). "Prior cases have held that verbal and physical threats of retaliation,
physical assault, denial of grievance forms or writing implements, and transfers constitute such
affirmative action." Id.

For the reasons discussed above, this Court finds that the Defendants' alleged
threats, harassment, and retaliation did not prevent Plaintiff from availing himself of the
grievance procedures. Moreover, Plaintiff has not suggested that Defendants thwarted his
attempts to file or appeal his grievance by "den[ying him] grievance forms or writing
implements," or by engaging in similar conduct. Amador, 655 F.3d at 103. Accordingly,
Defendants are not estopped from raising an exhaustion defense.

### 3. Special Circumstances Do Not Justify Plaintiff's Failure to Exhaust

Finally, a court considering an exhaustion defense should determine "whether
special circumstances . . . justify the prisoner's failure to comply with administrative procedural
requirements." Hemphill, 380 F.3d at 686 (citing Giano, 380 F.3d 670). "To determine whether

14

'special circumstances' exist, a court must consider 'the circumstances which might understandably lead uncounseled prisoners to fail to grieve in the normally required way.'" Winston, 2008 WL 2263191, at *10 (quoting Giano, 380 F.3d at 678). Accordingly, "[f]indings of special circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion." Id.

Here, Plaintiff argues that his failure to exhaust should be excused because prison officials did not respond to his grievance in a timely fashion. (Pltf. Br. (Dkt. No. 115) at 3) The rule in this Circuit, however, is that resort to all three levels of the grievance process is required "[e]ven where an inmate files a grievance yet receives no response." Williams, 2005 WL 2862007, at *10 (internal quotation omitted); see Charles, 2013 WL 6667632, at *4 ("Courts in this circuit require an inmate to pursue all levels of appeal even if the inmate does not receive a response to his initial grievance."); see also McCoy, 255 F. Supp. 2d at 246 ("It is well established that to exhaust . . . 'a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review' before filing suit.") (quoting Porter, 2002 WL 1402000 at *1)).

Moreover, New York's prison grievance procedures expressly provide that grievances "not decided within the time limits [set forth in the regulations] may be appealed to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Accordingly, the grievance procedures address circumstances in which prison officials have not responded to a grievance in a timely fashion. In such circumstances, inmates are directed to proceed to the next level of administrative review. Id.

Here, after the Inmate Grievance Review Committee's time to respond to Plaintiff's grievance had expired, Plaintiff did not properly appeal to the next level of review –

15

Green Haven's Superintendent – or to the CORC. Moreover, Plaintiff did not permit the CORC to consider his appeal before filing the instant lawsuit.

This Court concludes that there are no "special circumstances" that justify Plaintiff's failure to exhaust his administrative remedies.

\*       \*       \*       \*

"'[P]rison officials are entitled to require strict compliance with an existing grievance procedure,'" Williams, 2005 WL 2862007, at \*10 (quoting Orta, 2003 WL 58856, at \*7), and Plaintiff was required properly to exhaust his administrative remedies. Woodford, 548 U.S. at 81. He did not do so, and there is no basis in the record for excusing his failure to exhaust his administrative remedies. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. No. 108) is granted. The Clerk of the Court is directed to terminate the motion, enter judgment for Defendants, and close this case. The Clerk is further directed to mail a certified copy of this Order to pro se Plaintiff Anthony Aikens, 06-A-6139, Groveland Correctional Facility, 7000 Sonyea Road, Sonyea, NY 14556.

Dated: New York, New York
       March 19, 2015

SO ORDERED.

Paul G. Gardephe
United States District Judge